UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UBS FINANCIAL SERVICES, INC.,

        Plaintiff,

v.

JONATHAN MODIANO,
ADAM JONES, and
MARK STEINBERG,

        Defendant.
_____/

Case No. 2:25-cv-13206

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER (ECF No. 2), SCHEDULING STATUS CONFERENCE, AND DIRECTING PLAINTIFF TO SERVE DEFENDANTS**

Before this Court is an *ex parte* Motion for a Temporary Restraining Order (TRO), filed by Plaintiff UBS Financial Services, Inc, who alleges that three of its former employees—Defendants Jonathan Modiano, Adam Jones, and Mark Steinberg—left UBS and solicited UBS's clients in violation of their contractual obligations. As explained below, UBS's TRO will be granted in part.

## I. BACKGROUND

According to the verified Complaint, Defendants Jonathan Modiano, Adam Jones, and Mark Steinberg were "key members of a highly successful financial advisor team in [Plaintiff] UBS's Birmingham, Michigan office, serving UBS clients

with assets of more than $1.2 billion and generating annual revenues for UBS in excess of $8 million." ECF No. 1 at PageID.2.  Many of the assets these Defendants managed were those of UBS clients assigned to Defendants through a UBS program called the Aspiring Legacy Financial Advisor (ALFA) Program. *Id.* Though the ALFA Program, Defendants inherited clients from "a former UBS financial advisor who recently left the industry," and each Defendant entered into an ALFA Receiving Financial Advisor Agreement ("Receiving FA Agreement"), in which they agreed, among other things, not to solicit the inherited clients "to transition their accounts away from UBS during" a specified period, should Defendants leave UBS. *Id.* at PageID.12–13; *see also* ECF Nos. 1-2 at PageID.37 (detailing nonsolicitation terms for Defendant Jones); 1-3 at PageID.50 (same for Defendant Modiano); 1-4 at PageID.63 (same for Defendant Steinberg). For all Defendants, the period of the nonsolicitation clause was January 1, 2022, through December 31, 2027. *See* ECF No. 1 at PageID.13. The Receiving FA Agreements signed by all three Defendants also "prohibit Defendants from using, maintaining, taking, or disclosing any UBS Confidential Information other than in the course of performing their UBS employment duties." ECF No. 1 at PageID.14.

In addition to the Receiving FA Agreement, which applies only to those clients Defendants inherited through the ALFA Program, Defendants all signed several other agreements during their time with UBS which placed restrictions on

their ability to solicit UBS clients should they leave UBS and prohibited them from using or disclosing UBS's confidential information. *See id.* at PageID.15–19.

Despite these agreements, UBS alleges that on September 25, 2025, Defendants "simultaneously resigned from UBS without notice – using identical resignation notices that referred UBS to an attorney they had already engaged – and immediately went to work for RBC Wealth Management (RBC), a direct competitor of UBS." ECF No. 1 at PageID.4; *see also* ECF No. 1 at PageID.19. UBS alleges Defendants "strategically planned" their joint resignation to coincide with the dates that UBS was scheduled to physically relocate their offices so "they could remove physical documents [from the UBS office] undetected." *Id.* at PageID.20.

Since Defendants' resignations on September 25, UBS reports that "multiple clients" have notified UBS that they are "transitioning their business from UBS to Defendants at RBC." *Id.* at PageID.21. UBS further reports that it has "uncovered evidence that Defendants are contacting UBS clients" that Defendants agreed not to solicit under the terms of their ALFA Program Receiving FA Agreements. *Id.* UBS alleges Defendants began soliciting UBS's clients before they resigned and used confidential client information in doing so. *Id.* at PageID.21–22.

On September 26, 2025, UBS sent a letter to Defendants' attorney "reminding [Defendants] of their continuing obligations to UBS and insisting that they refrain from soliciting UBS clients as defined in their agreements, or misappropriating UBS

confidential information." *Id.* at PageID.23. Defendants' attorney responded that Defendants had not and would not solicit clients and did not steal any of UBS's confidential information. *Id.* Yet UBS maintains that in the two weeks since Defendants left UBS, "UBS has received electronic account transfer instructions to transfer more than $300 million in client assets formerly managed by Defendants at UBS to Defendants' new employer, RBC." *Id.* at PageID.22.

So, on October 10, 2025, UBS filed this lawsuit against Defendants, alleging all three breached contractual obligations and fiduciary duties, misappropriated confidential information, breached their duties of loyalty, and tortiously interfered with UBS's existing and prospective business relationships. ECF No. 1. At the same time UBS filed its complaint, it also filed a motion for a TRO, ECF No. 2, and a motion for expedited discovery, ECF No. 6.

Because Defendants have not yet been heard in this matter, this Court will resolve the motion *ex parte*.

## II. STANDARD OF REVIEW

A Court may issue a TRO without informing the other party, but only if the movant provides a detailed affidavit or verified complaint that clearly demonstrates the need for immediate action to avoid irreparable harm. Additionally, the movant's attorney must explain in writing the efforts made to notify the other party and the reasons why such notice is not necessary. FED. R. CIV. P. 65(b)(1).

If the procedural requirements are satisfied, then the merits of the motion may be considered. "[T]he purpose of a [temporary restraining order] under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). In determining whether to grant such relief, a court must weigh four factors:

> (1) whether the movant has a strong likelihood of success on the merits,
> (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief,
> (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and
> (4) whether the public interest would be served by granting the preliminary injunctive relief.

*A & W X-Press, Inc. v. FCA US, LLC*, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016).

Although district courts must balance these four factors, the movant's failure to establish either of the first two factors—a likelihood of success on the merits or irreparable harm—is usually fatal. See *CLT Logistics v. River West Brands*, 777 F. Supp. 2d 1052, 1064 (E.D. Mich. 2011).

### III. ANALYSIS

#### A. Procedural Requirements

UBS complied with the procedural requirements of Civil Rule 65 by filing a verified complaint that details the need for immediate action to avoid irreparable harm, *see* ECF No. 1, and serving a copy of its TRO motion on "all parties and/or attorneys of record" by e-mail, personal service, and/or hand delivery, ECF No. 2 at PageID.147. Thus, this Court will proceed to the injunctive relief factors.

#### B. Injunctive Relief Factors

Considering all four injunctive relief factors, UBS has demonstrated entitlement to an *ex parte* TRO.

At this stage, it appears UBS has a high likelihood of success on the merits of its breach of contract claims against Defendants. Although UBS brings several claims, their entitlement to a TRO depends primarily upon UBS's likelihood of success on its breach of contract claims. To that end, UBS alleges that all Defendants violated the nonsolicitation and confidentiality clauses of several employment agreements when they left UBS and started working for RBC. ECF No. 1. Specifically, UBS alleges that Defendants utilized confidential information to solicit UBS clients to become RBC clients. *Id.* Having reviewed the employment agreements, *see* ECF Nos. 1-2; 1-3; 1-4; 1-5; 1-6; 1-7; 1-8; 1-9, and the allegations in UBS's verified complaint, ECF No. 1, it appears likely that Defendants violated

the nonsolicitation and confidentiality clauses. Moreover, the nonsolicitation clauses at issue appear to be reasonable in scope. And—importantly—UBS alleges that Defendants violations of those clauses are ongoing, and that Defendants will continue to violate the employment agreements absent a court order. *See* ECF No. 2 at PageID.154. Thus, the first factor weighs in favor of a TRO.

UBS has also demonstrated irreparable harm. Specifically, UBS alleges that Defendants' ongoing breaches of their employment agreements are impairing and interfering with UBS's client relations and causing the loss of existing and future business. *See id.* at PageID.154. And courts in the Sixth Circuit have held that the loss of clientele and customer goodwill are irreparable injuries for which there is no adequate remedy at law. *See J.P. Morgan Sec. LLC v. Sullivan*, No. 25-11693, 2025 WL 1888785, at *3 (E.D. Mich. June 11, 2025)*; Churchill Downs Tech. Initiatives Co. v. Michigan Gaming Control Bd.*, 767 F. Supp. 3d 556, 583 (W.D. Mich. 2025); *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 530 (6th Cir. 2017). Thus, the second factor weighs in favor of a TRO.

As to the third and fourth factors, it appears at this stage that "greater injury will be inflicted upon Plaintiff by a denial of temporary injunctive relief than would be inflicted upon [Defendants] by granting such relief." *J.P. Morgan Sec. LLC v. Sullivan*, No. 25-11693, 2025 WL 1888785, at *3 (E.D. Mich. June 11, 2025). And the public has an interest in the enforcement of contracts and maintaining the

confidentiality of confidential information. *See JPMorgan Chase Bank, N.A. v. Wirtanen,* No. 15-11929, 2015 WL 3506105, at *6 (E.D. Mich. June 3, 2015). Thus, these third and fourth factors weigh slightly in favor of a TRO at this juncture.

In sum, the balance of the injunctive relief factors weigh in favor of a limited TRO compelling Defendants to abide by the terms of their employment agreements. Thus, UBS's motion will be granted.

### C. Bond

Civil Rule 65(c) states: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." While this language appears mandatory, "the rule in [the Sixth Circuit] has long been that the district court possesses discretion over *whether* to require the posting of security." *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins.*, 714 F.3d 424, 431 (6th Cir. 2013) (quoting *Moltan Co. v. Eagle–Picher Indus.*, 55 F.3d 1171, 1176 (6th Cir. 1995)). Without Defendants' appearance, this Court lacks the benefit of their arguments on what amount would be proper to compensate for any potential wrongful restraint. Accordingly, while this Court may revisit the issue at the preliminary-injunction stage, a bond will not be required at this time.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that UBS's *ex parte* motion for a temporary restraining order, ECF No. 2, is **GRANTED IN PART**. To that end, it is **ORDERED** that:

1. All Defendants, and any person or entity acting in concert with them or under their supervision, are **ENJOINED AND RESTRAINED** from violating the nonsolicitation clauses set forth in Defendants' respective employment agreements, as follows:

    a. **As to Defendant Modiano:** (i) 12/21/21 ALFA Receiving FA Agreement; (ii) 2/27/03 New Financial Advisor Hiring Agreement; (iii) 9/16/03 Financial Advisors/Trainee Team Agreement; and (iv) 5/1/25 Financial Advisor Team Agreement;

    b. **As to Defendant Steinberg:** (i) 12/21/21 ALFA Receiving FA Agreement; and (ii) 5/1/25 Financial Advisor Team Agreement;

    c. **As to Defendant Jones:** (i) 12/17/21 ALFA Receiving FA Agreement; 3/20/11 Agreement for New Financial Advisors; and 5/1/25 Financial Advisor Team Agreement;

2. All Defendants, and any person or entity acting in concert with them or under their supervision, are **ENJOINED AND RESTRAINED** from possessing, using, disclosing, or disseminating UBS's Confidential Information;

3. Defendants are **DIRECTED** to provide to UBS a list of all UBS clients with whom Defendants have initiated contact about the possibility of

moving their business and/or accounts to RBC **on or before Thursday, October 16, 2025**.

UBS's Motion for an *ex parte* motion for a temporary restraining order, ECF No. 2, is **DENIED IN PART** to the extent it sought any relief beyond that listed above in items 1–3.

Further, it is **ORDERED** that the Parties are **DIRECTED** to appear for a virtual status conference on **Thursday, October 16, 2025 at 11:00 AM EDT**. If a preliminary injunction hearing is necessary, it will be scheduled at that status conference.

Further, it is **ORDERED** that the Parties are **DIRECTED** to proceed with arbitration in accordance with Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes.

Further, it is **ORDERED** that Plaintiff is **DIRECTED** to (1) serve Defendants with a copy of this order by e-mail **on or before Tuesday, October 14, 2025**, and (2) file a corresponding proof of service **on or before Wednesday, October 15, 2025.**

**This is not a final order and does not close the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: October 13, 2025